**Leonard H. DELMONTE, Plaintiff,**

v.

**DEPARTMENT OF BUSINESS AND PROFESSIONAL REGULATION, DIVISION OF ALCOHOLIC BEVERAGES AND TOBACCO OF THE STATE OF FLORIDA, and George Stuart, Secretary, Department of Business and Professional Regulation, in his official capacity, Defendants.**

No. 92–1319–Civ.

United States District Court,
S.D. Florida.

March 3, 1995.

Robert E. Weisberg, Law Offices of Robert E. Weisberg, Coral Gables, FL, for plaintiff.

JC Miller, Dept. of Legal Affairs, Hollywood, FL, for defendants.

## MEMORANDUM OF DECISION AND ORDER

MISHLER, District Judge.

On January 6, 1995, after a four day trial, the jury returned a verdict in favor of Plaintiff and against Defendants. The issue of jurisdiction, based on Defendants' claim of the requirement that Plaintiff has the burden of establishing that the Department of Business and Professional Regulation, Division of

Alcoholic Beverages and Tobacco of the State of Florida ("ABT") was a recipient of Federal financial assistance pursuant to Section 504 of the Rehabilitation Act of 1973, delayed entry of judgment.

For the following reasons we find that ABT was a recipient of Federal financial assistance and thus, Plaintiff has satisfied the jurisdictional requirements of § 504 of the Rehabilitation Act.

## FACTS

### Background

Plaintiff Delmonte began his employment with ABT in 1977. As of July 1988, Delmonte held the position of a sworn Law Enforcement Investigator, which is now known as Special Agent. On July 22, 1988, Delmonte suffered a back injury when his car was hit from behind by a Florida Power and Light truck while preparing a report. His injuries required hospitalization and kept him out of work for three months. In October 1988, he returned to work and was put on light duty. On or about June 8, 1990, Delmonte was demoted to the position of non-law enforcement Investigator because of the back injury.

### Federal Training

Both prior to and after the 1990 demotion, ABT received training by federal law enforcement agencies at no cost to ABT or the State of Florida. The training was conducted by the Federal Bureau of Investigation (FBI), the Drug Enforcement Agency (DEA), the Internal Revenue Service (IRS), the Federal Bureau of Alcohol, Tobacco and Firearms (ATF) and the Secret Service. The training consisted of the following:

1. *FBI*

a. FBI National Academy Program, Quantico, Virginia.

Over ten ABT officers since 1980 through the present have attended the FBI National Academy Program. The Program is a three month intensive training course for state and local law enforcement. There is no cost to ABT for this training.

b. Transitional Firearms Training, Tallahassee, Florida.

Training was conducted by FBI Special Agents Dennis Durden and Jim Whitaker during the years 1991 and 1992. Training was provided to all ABT officers over a three and on-half day period to classes of 15–20 people. Although ABT paid for the materials used (i.e. ammunition), no payment was made to the FBI for the training.

c. Interviews and Interrogation Training, Tallahassee, Florida.

Training was conducted by Special Agent Gene Holly during the years 1990, 1991 and 1992. There was no cost to ABT for this training.

2. *DEA*

DEA personnel conducted narcotics investigation courses throughout Florida since 1989. These classes were attended by 2–3 ABT agents at no cost to ABT.

3. *IRS*

In 1989, the IRS provided a three day training and financial course for approximately ten law enforcement officers from ABT. There was no cost to ABT for this IRS training.

4. *ATF*

ATF personnel provided dangerous weapons training for new ABT recruits during the years 1991 and 1992. There was no cost to ABT for the 2–4 hour class attended by 15–18 ABT law enforcement recruits.

5. *Secret Service*

A three day training course in dignitary protection was provided by the Secret Service at no charge. The purpose was to help prepare ABT in case their services were needed at the international Conference of the Americas that took place in Miami, Florida.

### Hurricane Relief

In addition to the training, ABT also received approximately 1.3 million dollars from the Federal Emergency Management Agency ("FEMA") to reimburse ABT for costs associated with the aftermath of Hurricane Andrew. These costs related primarily to overtime pay and equipment used solely for work related to Hurricane Andrew.

## DISCUSSION

The sole issue left before this court is whether ABT was a recipient of Federal financial assistance pursuant to § 504 of the Rehabilitation Act of 1973. Section 504 provides in pertinent part:

No otherwise qualified individual with a disability in the United States, as defined in section 706(8) of this title shall, by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subject to discrimination under any program or activity receiving Federal financial assistance ...

29 U.S.C. § 794(a).

Plaintiff claims that ABT received Federal financial assistance in two forms: 1) training by the Federal Bureau of Investigation (FBI), the Drug Enforcement Agency (DEA), the Internal Revenue Service (IRS) and the Secret Service at no cost; and 2) reimbursement from the Federal Emergency Management Agency (FEMA) for work performed during the aftermath of Hurricane Andrew. Defendant claims that the above relationships with the federal government do not make ABT a recipient of Federal financial assistance under § 504.

■ "The starting point of any inquiry into the application of a statute is the language of the statute itself." *U.S. Dept. of Trans. v. Paralyzed Veterans of America,* 477 U.S. 597, 604, 106 S.Ct. 2705, 2710, 91 L.Ed.2d 494 (1986) (citing *Reiter v. Sonotone Corp.,* 442 U.S. 330, 337, 99 S.Ct. 2326, 2330, 60 L.Ed.2d 931 (1979)). Section 504 coverage is triggered by the receipt of Federal financial assistance. Congress sought to impose § 504 coverage as a form of contractual cost of the recipient's agreement to accept federal funds. *Paralyzed Veterans,* 477 U.S. at 605–06, 106 S.Ct. at 2711. " 'Congress apparently determined that it would require contractors and grantees to bear the costs of providing employment to the handicapped as a quid pro quo for the receipt of federal funds.' " *Paralyzed Veterans,* 477 U.S. at 605, 106 S.Ct. at 2711 (quoting *Consolidated Rail Corporation v. Darrone,* 465 U.S. 624, 633, n. 13, 104 S.Ct. 1248, 1254 n. 13, 79 L.Ed.2d 568 (1984)). Thus, Congress imposes the obligations of § 504 upon those who

are in a position to accept or reject them as a condition of receiving federal funds. *Paralyzed Veterans,* 477 U.S. at 606, 106 S.Ct. at 2711.

Although § 504 does not define "Federal financial assistance," the governing federal regulation at 28 C.F.R. § 41.3(e) provides:

*Federal financial assistance* means any grant, loan, contract (other than a procurement contract or a contract of insurance or guaranty), or any other arrangement by which the agency provides or otherwise makes available assistance in the form of:

(1) Funds;

(2) Services of Federal personnel; or

(3) Real and personal property or any interest in or use of such property, including:

(i) Transfers or leases of such property for less than fair market value or for reduced consideration; and

(ii) Proceeds from a subsequent transfer or lease of such property if the Federal share of its market value is not returned to the Federal Government.

■ On its face, the training of ABT employees by federal law enforcement personnel at no cost would seem to fall squarely under "assistance in the form of ... [s]ervices of Federal personnel." However, defendant argues that the training was isolated and conducted by federal volunteers. Defendant further asserts that if there is no intention by the federal government to subsidize the entity, then there is no Federal financial assistance. *See DeVargas v. Mason & Hanger–Silas Mason Co.,* 911 F.2d 1377, 1382 (10th Cir.1990).

Therefore, we must look to the grant statute to determine whether Congress intended to provide a subsidy when it authorized this type of training. *See Paralyzed Veterans,* 477 U.S. at 603–04, 106 S.Ct. at 2710; *see also DeVargas v. Mason & Hanger–Silas Mason Co.,* 911 F.2d at 1382. In other words, the question really is whether Congress intended for this type of assistance to trigger the coverage of § 504 and its inherent obligations. The answer to this question is yes; this is exactly the type of assistance that the Department of Justice and Congress

contemplated would trigger coverage under § 504. In fact, this training is explicitly listed in the Department of Justice regulations as Federal financial assistance pursuant to § 504.

The Department of Justice implements § 504 of the Rehabilitation Act of 1973, as amended, through Subpart G[1] of Title 28 C.F.R. § 42. *See* 28 C.F.R. § 42.501. "This subpart applies to each recipient of Federal financial assistance from the Department of Justice and to each program receiving or benefitting from such assistance." 28 C.F.R. § 42.502. The definition of "Federal financial assistance" found in this subpart is identical to the definition in 28 C.F.R. § 41.3(e), quoted above, and therefore includes "[s]ervices of Federal personnel". *See* 28 C.F.R. § 42.540(f). More importantly, Appendix A to Subpart G contains a list of types of Federal financial assistance administered by the Department of Justice to which the Rehabilitation Act applies. Included in this list are the following:

  * * * * * *

4. Assistance provided by the Drug Enforcement Agency (DEA) including training, joint task forces, information sharing agreements, cooperative agreements, and logistical support, primarily to State and local government agencies (21 U.S.C. 871–886).

  * * * * * *

7. Assistance provided by the Federal Bureau of Investigation (FBI) including field training, training through its National Academy, National Crime Information Center, and laboratory facilities, primarily to State and local criminal justice agencies (Omnibus Crime Control and Safe Streets Act of 1968, as amended 42 U.S.C. 3701–3796).

  * * * * * *

11. Assistance provided by the Department of Justice participating agencies that conduct specialized training through the National Center for State and Local Law Enforcement Training, a component of the Federal Law Enforcement Training Center (FLETC), Glenco, Georgia (Pursuant to Memorandum Agreement with the Department of Treasury).

APPENDIX A—FEDERAL FINANCIAL ASSISTANCE ADMINISTERED BY THE DEPARTMENT OF JUSTICE TO WHICH THIS SUBPART [SUBPART G—28 C.F.R. §§ 42.501 et seq.] APPLIES.[2]

Thus, the specific training that ABT officers received from the DEA, FBI, and Department of Treasury are all considered Federal financial assistance pursuant to § 504, as evidenced by Department of Justice regulations 28 C.F.R. §§ 42.501 et seq. The training offered by these federal law enforcement organizations were not isolated training by federal volunteers, but rather assistance provided to State and local law enforcement agencies from the federal government to help them prevent and fight crime. In return for this assistance from the Department of Justice, State and local law enforcement agencies agree to comply with Section 504 of the Rehabilitation Act.

One example of this contractual relationship is evidenced by the assistance provided to ABT from the National Academy Program of the FBI. The nomination form[3] used by State and local law enforcement agencies to nominate an officer to the National Academy Program, explicitly seeks assurance that the law enforcement agency making the nomination is in compliance with, *inter alia*, the Regulations of the Department of Justice 28 C.F.R. §§ 42.501 et seq. (which includes the implementation and application of the Rehabilitation Act of 1973). *See* attached Nomination Form (FD–164 (Rev. 5–14–84)). Thus, ABT was well aware that the training provided from the FBI was financial assis-

---

1. Subpart G—Nondiscrimination based on Handicap in Federal Assisted Programs—Implementation of Section 504 of the Rehabilitation Act of 1973.

2. The regulations further state: Failure to list a type of Federal assistance in appendix A shall not mean, if section 504 is otherwise applicable, that a program is not covered. *See* Note to Appendix A to Subpart G.

3. This Court, *sua sponte*, obtained from the Federal Bureau of Investigation a nomination form to the National Academy Program.

tance and was intended as a quid pro quo for complying with the Rehabilitation Act and other anti-discrimination statutes.

These Department of Justice regulations are consistent with Congressional intent. The authorization for this type of Federal financial assistance can be found in Title VI of the Comprehensive Crime Control Act of 1984 titled Justice Assistance. P.L. 98–473. "The justice assistance program authorized by this title is intended by the Administration and the Committee to provide a highly targeted program of Federal financial assistance ... to State and local law enforcement authorities." 1984 U.S.C.C.A.N. 3182, 3455. The legislative history further states that the Act "authorizes the FBI Director to establish and conduct training for State and local criminal justice personnel at the FBI Academy at Quantico and to assist in conducting local and regional training programs at the request of a State or unit of local government." 1984 U.S.C.C.A.N. 3182, 3471. Thus, Congress intended to provide Federal assistance to State and local authorities in order "to respond to the violent crime problem...." 1984 U.S.C.C.A.N. 3182, 3457. In addition, they specifically authorized the very same training and assistance that ABT received.

We, therefore, find that the training ABT officers received from the DEA, FBI and the Department of Treasury constituted receipt of Federal financial assistance pursuant to § 504 of the Rehabilitation Act of 1973. ABT agreed to comply with the Rehabilitation Act as a quid pro quo for the receipt of the federal training assistance. This contractual relationship is evidenced by the nomination form to the FBI National Academy. The form explicitly requests assurances that the State or local law enforcement agency is in compliance with § 504.

Since we find that ABT is a recipient of Federal Financial assistance pursuant to § 504 due to the acceptance of training by several federal law enforcement agencies at no cost, we need not consider the funds ABT received from FEMA for assistance in helping with the aftermath of Hurricane Andrew.

*CONCLUSION*

For the above reasons, we find that ABT is a recipient of Federal financial assistance and thus, Plaintiff has met the jurisdictional requirements of § 504 of the Rehabilitation Act. Final judgment will be entered in favor of Plaintiff awarding him $75,000 in compensatory damages as found by the jury, back pay, lost benefits, attorney's fees and costs, as well as ordering Defendants to reinstate Plaintiff to the position of Special Agent. This Court retains jurisdiction over the award over back pay and lost benefits, but expects the parties to determine the calculations. And it is

SO ORDERED.

## NOMINATION OF LAW ENFORCEMENT OFFICER TO ATTEND THE NATIONAL ACADEMY PROGRAM OF THE FEDERAL BUREAU OF INVESTIGATION

**INSTRUCTIONS**—This nomination should be signed by a Commissioner, Superintendent or Chief of Police; or by a Sheriff or head of a county police agency; or by the Chief, Superintendent, or executive officer of a state police or highway patrol organization; or the application may be filed by an officer of the state, county, or municipality of higher rank than those mentioned, such as Mayor, City Manager, Chairman of the County or City Commissioner, or Governor. This nomination should be accompanied by an attached application properly filled out furnishing the personal and official history of the officer nominated. The Chief of Police, Sheriff, or Superintendent of a state police organization may nominate himself/herself to take this course of training if he/she so desires.

TO: Director, FBI

I hereby nominate the below-named representative of this law enforcement agency to attend a session of the FBI National Academy at Quantico, Virginia.

1568

Nominee

|      |       |        |
|------|-------|--------|
| Last | First | Middle |

| Title or Rank | Law Enforcement Agency |
|---------------|------------------------|

I realize the primary purpose of the National Academy is to train outstanding law enforcement officers as instructors and administrators. Further, I believe the officer nominated herein is basically qualified to fulfill this purpose upon return to his/her organization after graduation. Specifically, I understand the nominee meets the following minimum requirements:

1. A regular full-time officer of a duly constituted law enforcement agency of a municipality, county, or state, having at least five years of substantially continuous such experience;

2. At least 25 years of age;

3. In excellent physical condition, capable of sustained strenuous exertion and regular participation in the use of firearms, physical training and defensive tactics, which will be confirmed by a thorough physical examination (submitted when requested by FBI) by a medical doctor of nominee's choice and at nominee's expense;

4. Is of excellent character and enjoys a reputation for professional integrity;

5. Exhibits an interest in law enforcement as a public service; a seriousness of purpose, qualities of leadership; and enjoys the confidence and respect of fellow officers;

6. Has a high school diploma or high school equivalency certificate;

7. Agrees to remain in law enforcement a minimum of three years after graduation from the FBI National Academy;

When a vacancy exists in a session for which the officer's application can be considered, I authorize the FBI to make a complete and thorough investigation of the nominee to confirm his/her suitability as a candidate. To assist in this regard there is attached an executed application by the nominee. I have been assured by the nominee that he/she will remain in law enforcement for a minimum of 3 years following graduation from the National Academy.

I hereby assure that the law enforcement agency making this nomination for a representative to attend the FBI National Academy is in compliance with Title VI of the Civil Rights Act of 1964 (42 U.S.C. 2000d–2000d–4), Title IX of the Education Amendments of 1972 (20 U.S.C. 1681 et seq.) and the Regulations of the Department of Justice 28 CFR 42.010 et seq., issued pursuant to that title to the end that **no person in the United States shall,** on the grounds of race, color, national origin or sex, be excluded from participation in, be denied the benefits of, or be otherwise subjected to discrimination under any program or activity for which this agency receives Federal financial assistance from the Department. This agency recognizes the right of the United States to seek judicial enforcement of this assurance.

I certify that I have reviewed the attached application and that it reflects information which is accurate to the best of my knowledge.

**1569**

_____

Signature of Nominating Official

_____

Name and Title (type or print)

_____

Law Enforcement Agency

_____

Date        City     State     Zip Code

(Forward this executed nomination and the completed application of the nominee to the Special Agent in Charge of the FBI office in your territory. He can answer questions you may have pertaining to the FBI National Academy Program.)