Malik **JARNO**, Plaintiff,

v.

Warren **LEWIS**, et al., Defendants.

No. CIV.A. 02–1622–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

April 11, 2003.

---

Eliza Tamsin Platts–Mills, Esq., Washington Lawyers' Committee for Civil Rights & Urban Affairs, Washington, DC, for Plaintiff.

William J. Howard, Asst. U.S. Atty., United States Attorney's Office, Alexandria, VA, for Defendants.

## MEMORANDUM OPINION

BRINKEMA, District Judge.

Before us is defendant Piedmont Regional Jail Authority's Motion to Dismiss, in which it asks us to dismiss plaintiff Malik Jarno's claims against it under 42 U.S.C. § 1983 and Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq.*[1] We partially addressed this motion in open court on February 21, 2003, directing the parties to file supplemental briefing on two issues left unresolved at the hearing: whether a state-established prison authority acts "under color of state law" with regard to immigrant detainees held at its facilities pursuant to a contract with the federal government, and whether that authority's receipt of federal monies in consideration of that contract constitutes "federal financial assistance" under Title VI. This Memorandum Opinion resolves both of these issues.

## BACKGROUND

According to his Complaint, Plaintiff Malik Jarno is a Guinean citizen with limited English skills who is moderately mentally retarded. Jarno alleges that, during the time period in question, he was a 17–year–old juvenile. On January 28, 2001, Jarno attempted to enter the United States through Dulles International Airport in Sterling, Virginia, using a French passport. Although Jarno allegedly asserted a claim for political asylum at that time, he was detained by the United States Immigration and Naturalization Service (the "INS") for a period of roughly eight months before being given a hearing before an Immigration Judge, in late September 2001. During this time period, the INS placed Jarno in a number of detention facilities, one of which was the Piedmont Regional Jail (the "Jail").

Defendant Piedmont Regional Jail Authority (the "Authority") is a regional jail authority established pursuant to Section 53.1 of the Virginia Code. The Authority maintains the Jail on behalf of six partici-

1. By an Order dated February 21, 2003, we granted in part and denied in part defendants Lewis Barlow and T. Cynthia Williams' Motion to Dismiss, with the denial subject to reconsideration pending further briefing by the parties. Having considered that briefing, we find no reason to alter our ruling, beyond the clarification that the dismissal of defendant Barlow was without prejudice.

pating Virginia counties. Jarno alleges that, while delegating final policymaking authority to the Jail's Superintendent, the Authority is responsible for establishing minimum standards for the Jail's administration and operation. The Jail houses INS detainees such as Jarno pursuant to a contract with the federal government.

Jarno was detained at the Jail from approximately August or September 2001 to March 2002. According to the Complaint, he was housed within the general population at the Jail during most of his confinement there, except for a ten-day period beginning approximately January 23, 2002, when he was placed in solitary confinement pursuant to the direction of the INS. Jarno alleges that the Jail was not properly equipped, and its guards not properly trained, to handle immigration detainees. Specifically, he claims that Jail guards engaged in a pattern of mistreating immigration detainees, resulting in two separate incidents in which Jarno himself was physically abused, first by a guard spraying him in the face with pepper spray at close range without provocation, and second in a group assault in which four or five guards attacked and battered him without provocation. Both of these incidents allegedly occurred on November 1, 2001.

Jarno sued the Authority, the Jail guards who allegedly attacked him, the superintendent of the Jail, and various INS officials, alleging constitutional and statutory violations resulting both from his detention and from his treatment at the Jail. In Count VI of his Complaint, Jarno alleges a cause of action against the Authority under 42 U.S.C. § 1983, claiming that the Authority condoned a custom or policy under which guards were permitted to use excessive force on INS detainees in violation of the Fourteenth Amendment, and that the Authority's failure to adequately train Jail guards directly resulted in the use of unconstitutionally excessive force against him. In Count VII, Jarno claims that the Authority unlawfully discriminated against him on the basis of national origin in violation of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq.* ("Title VI"), by, *inter alia,* failing to provide him with language translation services during his confinement at the Jail.

The Authority moved to dismiss the claims against it. In its motion, the Authority argues that it is not subject to suit under § 1983 because it did not act "under color of state law" with regard to Jarno, and that it is not subject to suit under Title VI because it does not receive "federal financial assistance" as defined in 28 C.F.R. § 42.102(c). For the reasons discussed below, we find no merit to the Authority's first argument, but will grant the Motion to Dismiss with regard to Jarno's Title VI claim.[2]

## DISCUSSION

### I. Standard of Review

A complaint should be dismissed for failure to state a claim pursuant to Fed. R.Civ.P. 12(b)(6) "if, after accepting all well-pleaded allegations in the plaintiff's complaint as true ... it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards v. City of Goldsboro,* 178 F.3d 231, 244 (4th Cir.1999) (citing

---

**2.** The Authority's motion raises a third argument, that Jarno fails to state a claim under § 1983 because he cannot, as a matter of law, establish that the alleged abuse that occurred on November 1, 2001 constituted excessive force in violation of the Fourteenth Amendment. Because we resolved that issue in open court on February 21, 2003, we do not address it here.

*Republican Party v. Martin,* 980 F.2d 943, 952 (4th Cir.1992)). In considering the Authority's Motion to Dismiss, we draw all reasonable factual inferences in Jarno's favor. *Id.* We are not, however, required to accept as true the legal conclusions set forth in the complaint. *Id.* (citing *District 28, United Mine Workers of America, Inc. v. Wellmore Coal Corp.,* 609 F.2d 1083, 1085 (4th Cir.1979)).

*II. Count VI (42 U.S.C. § 1983)*

■ Section 1983 provides that "[e]very person, who under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects ... any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." 42 U.S.C. § 1983. In *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 937, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982), the Supreme Court set forth the standard for determining whether a party acts under color of state law, and is therefore subject to suit under § 1983:

> First, the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible.... Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor. This may be because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State.

*Id.* Section 1983 does not apply, however, to parties acting under color of federal law. *See Wheeldin v. Wheeler,* 373 U.S. 647, 650 n. 2, 83 S.Ct. 1441, 10 L.Ed.2d 605 (1963);

*Dowe v. Total Action Against Poverty in Roanoke Valley,* 145 F.3d 653, 658 (4th Cir.1998).

■ The parties do not dispute that, in its normal course of operations, the Authority is a state actor. Rather, the Authority argues that its contractual relationship with the INS transformed it from a state actor into a federal actor with regard to its treatment of Jarno, because Jarno was detained pursuant to federal law. Jarno argues, however, that because the INS exercised no meaningful control over the manner in which he was held within the Jail, the Authority was not a federal actor with regard to either him or other INS detainees held in the general prison population.

The precise issue before us was addressed in *Henderson v. Thrower,* 497 F.2d 125 (5th Cir.1974). In *Henderson,* the Fifth Circuit reversed the dismissal of a federal prisoner's § 1983 claim against various officials of the Mobile, Alabama city jail, who had allegedly deprived the plaintiff of adequate medical care while he was temporarily confined in that facility. The court below had dismissed the complaint for failure to state a claim, finding that the defendants were not acting under color of state law but rather were simply holding the plaintiff pursuant to a contract with the federal government for the temporary care and safekeeping of federal prisoners. In reversing, the Fifth Circuit stated that the proper focus of the inquiry was "not on the particular circumstances which brought the plaintiff under state control, but rather on the fact of that control and the manner of its exercise." *Id.* at 125–26. Because the federal contract at issue did not authorize federal interference with the operation of the Mobile jail, and because the defendant jail officials supervised and treated the plaintiff "by virtue of the positions conferred on

them [under state law]," the court found that the defendants were subject to suit as state actors under § 1983. *Id.* at 126.

Courts that have considered the same issue in other contexts have generally held that whether an official acts under color of state or federal law largely depends upon the authority under which the action that causes the constitutional harm is taken. *See, e.g., Rosas v. Brock*, 826 F.2d 1004, 1007 (11th Cir.1987) ("Where the challenged action by state employees is nothing more than the application of federal rules, the federal involvement in those actions is so pervasive that the actions are taken under color of federal and not state law."); *Johnson v. Orr*, 780 F.2d 386, 390 (3rd Cir.1986) (finding that although "[a]ll of the circumstances must be examined to consider whether the actions complained of were sufficiently linked to the state . . . [a] crucial inquiry is 'whether day-to-day operations are supervised by the Federal [or state] government'") (citations omitted); *Askew v. Bloemker*, 548 F.2d 673, 677 (7th Cir.1976) (finding no state action in a raid conducted by officers employed by both federal and state agencies, where the raid was completely instigated and controlled by the federal agency and occurred outside the state agency's jurisdiction). Although the Fourth Circuit has not ruled on the precise question before us, it has in at least one instance found § 1983 to be an appropriate vehicle for a federal prisoner seeking redress for constitutional injuries allegedly sustained in the custody of local jail officials pursuant to a federal contract. *See Loe v. Armistead*, 582 F.2d 1291, 1293 (4th Cir.1978).

Applying the reasoning in *Henderson* to the allegations in the Complaint, we find that the manner of the control exercised by the Authority which led to the alleged constitutional violations was state action, not federal. The injuries of which Jarno complains resulted from the Authority's alleged failure to train its guards not to use excessive force against INS detainees, and its alleged condonation of a policy and practice of using such excessive force on those detainees. Although a federal detention order provided the legal jurisdiction for holding Jarno at the Jail, the Authority has not alleged that the federal contract specified how it was to supervise its guards. Indeed, such an inference is undercut by the Jail's failure to segregate INS detainees from the general inmate population. For these reasons, we find that Jarno's complaint is sufficiently pled with regard to the state action component of its § 1983 claim against the Authority.

### III. Count VII (Title VI of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000d et seq.)

■ Title VI prohibits recipients of "[f]ederal financial assistance" from discriminating on the basis of race, color, or national origin. 42 U.S.C. § 2000d. "Federal financial assistance" is defined by 28 C.F.R. § 42.102(c) to include, *inter alia*, "[a]ny Federal agreement, arrangement, or other contract which has as one of its purposes the provision of assistance." 29 C.F.R. § 42.102(c)(5). The parties dispute whether the monies received by the Authority pursuant to its contract with the INS constitute federal financial assistance under Title VI and the applicable regulation.

The Authority argues that it does not receive federal financial assistance within the meaning of Title VI. It maintains that federal procurement contracts such as the one between it and the INS do not have as one of their purposes "the provision of assistance," because the sole purpose of the government payment is to compensate the contracting party for services rendered. In opposing the Authority's mo-

tion, Jarno argues that the receipt of any federal funds whatsoever requires that the recipient comply with Title VI, and that, because it received such funds, the Authority cannot discriminate based on national origin in the operation of its programs and activities.

■ Although the Fourth Circuit has yet to address this issue, other circuit courts have squarely held that procurement contracts do not constitute federal financial assistance where the recipient receives no government subsidy for its services but rather acts solely as a market participant. *See DeVargas v. Mason & Hanger–Silas Mason Co.*, 911 F.2d 1377, 1382 (10th Cir.1990); *Arline v. School Board of Nassau County*, 772 F.2d 759, 762 (11th Cir.1985), *aff'd on other grounds*, *School Board of Nassau County v. Arline*, 480 U.S. 273, 107 S.Ct. 1123, 94 L.Ed.2d 307 (1987); *Jacobson v. Delta Airlines, Inc.*, 742 F.2d 1202, 1210 (9th Cir.1984), *cert. dismissed*, *Delta Air Lines, Inc. v. Jacobson*, 471 U.S. 1062, 105 S.Ct. 2129, 85

L.Ed.2d 493 (1985).[3] The case law and applicable regulation indicate that the term "federal financial assistance" should be given its plain and ordinary meaning, that is, aid provided to assist rather than to compensate for services rendered. *See* 28 C.F.R. § 42.102(c)(5); *DeVargas*, 911 F.2d at 1382 (defining "federal financial assistance" as "a subsidy," and focusing on whether the government intends a payment to be a subsidy or compensation). That Congress intended this term to exclude *quid pro quo* payments on government contracts is further supported by Title VI's legislative history. *See Jacobson*, 742 F.2d at 1209 ("The drafters of Title VI ... made it clear that that statute was not intended to apply to government procurement contracts."). Against the persuasive reasoning of these cases, Jarno has cited no direct authority to the contrary.[4] Although the complaint alleges that the Authority "is a federal funding recipient," Jarno has provided no factual basis for this assertion. Therefore, as pled, the complaint is insufficient as a mat-

**3.** Although these cases interpreted the term "federal financial assistance" in the context of § 504 of the Rehabilitation Act, 29 U.S.C. § 794 (the "Rehabilitation Act"), rather than in the context of Title VI, prevailing case law suggests that the Rehabilitation Act and Title VI should be interpreted similarly. *See, e.g., United States Department of Transportation v. Paralyzed Veterans*, 477 U.S. 597, 600 n. 4, 106 S.Ct. 2705, 91 L.Ed.2d 494 (1986) (noting that Title VI was the congressional model for subsequently enacted statutes such as the Rehabilitation Act and Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.* ("Title IX"), and that case law interpreting Title VI is generally applicable to these later statutes); *Cannon v. University of Chicago*, 441 U.S. 677, 710, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979) (relying on the premise that Title VI and Title IX should receive the same construction); *see also Jacobson*, 742 F.2d at 1209 ("The legislative history of the Rehabilitation Act ... indicates that ['federal financial assistance' was] to be given the same meaning as the same term[ ] in [Title VI].").

**4.** Jarno cites to recently published guidelines from the United States Department of Justice ("DOJ") that define "[r]ecipients of DOJ assistance" to include "[d]epartments of corrections, jails, and detention facilities, including those recipients that house detainees of the Immigration and Naturalization Service." *Department of Justice Guidance to Federal Financial Assistance Recipients Regarding Title VI Prohibition Against National Origin Discrimination Affecting Limited English Proficient Persons*, 67 Fed.Reg. 41455, 41459 (2002). However, those same guidelines define "federal financial assistance" to include "grants, training, use of equipment, donations of surplus property, and other assistance." There is no indication that the DOJ considers money paid to recipients housing INS detainees to constitute "federal financial assistance" where the funds are intended to compensate for services rendered.

ter of law with regard to Count VII, and that count will accordingly be dismissed. Should Jarno have a more specific basis upon which to replead a cause of action under Title VI, he may do so; he must, however, comply with Fed.R.Civ.P. 11 in alleging facts to support a claim that the Authority is a recipient of federal financial assistance as discussed in this Memorandum Opinion.

## CONCLUSION

For these reasons, we find no merit to the Authority's argument that it was not a state actor with regard to Jarno, but will dismiss the cause of action against it under Title VI. An appropriate Order will issue.

The Clerk is directed to forward copies of this Memorandum Opinion to counsel of record.