Frederick **SHOTZ**, et al., Plaintiff,

v.

**AMERICAN AIRLINES, INC.,**
**et al., Defendants.**

No. 04–20372–CIV.

United States District Court,
S.D. Florida.

June 8, 2004.

---

Miguel Manuel de la O of de la O & Marko, Barbara Ann Junge, for Plaintiff.

Joseph Z. Fleming and Robert Stewart Fine of Greenberg Traurig, Miami, FL, Robert P. Charrow and Laura Metcoff Klaus of Greenberg Traurig, Washington, DC, Brian Clayborne Blair of Greenberg Traurig, Orlando, FL, for Defendant.

### *ORDER GRANTING DEFENDANTS' MOTION TO DISMISS*

UNGARO–BENAGES, District Judge.

THIS CAUSE is before the Court upon Defendants' Joint Motion to Dismiss Pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6), filed on April 15, 2004.

THIS COURT has considered the motion, the pertinent portions of the record and is otherwise fully advised in the premises. Defendants filed the present Joint Motion to Dismiss Pursuant to Fed. R.Civ.P. 12(b)(1) and 12(b)(6) ("Motion") on April 15, 2004. On May 4, 2004, Plaintiffs filed a Response to Defendants' Joint Motion to Dismiss Pursuant to Fed. R.Civ.P. 12(b)(1) and 12(b)(6) ("Response"), to which Defendants replied on May 27, 2004 ("Reply"). The matter is ripe for disposition.

### STATEMENT OF FACTS

Plaintiffs, who are individuals with disabilities, sued the Defendants (ten airline carriers) on February 17, 2004,[1] alleging that the Defendants violated the Rehabilitation Act, 29 U.S.C. § 701 *et seq.*[2] In their amended complaint, Plaintiffs allege that the Defendants have "failed to implement system wide policies and practices that would make their facilities and services accessible to people with disabilities." Amended Complaint at 14. As a result, Plaintiffs ask this Court to order the Defendants "to remove all barriers to equal participation by Plaintiffs in [Defendants'] facilities, services, programs, and activities to make them accessible to and usable by individuals with disabilities." *Id.* at 32. Additionally, Plaintiffs seek compensatory and consequential damages, along with attorney's fees and costs. *Id.* at 32–33.

Plaintiffs recognize that "the mechanism (*i.e.*, private lawsuits) for protecting the rights of the disabled provided by the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.* ('ADA'), cannot be used to address the issues that continue to bar the disabled from having equal access to air travel," *see id.* at 4, and explain that " 'Congress did not intend to create a private right of action in a federal district court to vindicate the [Air Carrier Access Act's ('ACAA') ] prohibition against disability-based discrimination on the part of air carriers.' " *Id.* (quoting *Love v. Delta Air Lines*, 310 F.3d 1347, 1359 (11th Cir. 2002)).

However, Plaintiffs assert that "[t]ravelers with disabilities now have a mechanism to enforce the eighteen year old ACAA

---

1. Plaintiffs filed an amended complaint on February 27, 2004. *See* DE 18.

2. The Rehabilitation Act provides in relevant part that "[n]o otherwise qualified individual with a disability in the United States ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance...." 29 U.S.C. § 794(a).

and guarantee equal access to air travel" because "[i]n 2001 and 2002, pursuant to the Air Transportation Safety and System Stabilization Act, Pub.L. No. 107–42, 115 Stat. 230 (2001) [ ('Stabilization Act') ], the defendant air carriers received, collectively, more than $3.7 billion in federal grants." *Id.* at 4–5. Plaintiffs allege that the "receipt of federal funds subjects each defendant to the anti-discrimination provisions of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 701, *et seq.*" *Id.* at 5. Defendants disagree and have sought the dismissal of the amended complaint, arguing that the Rehabilitation Act does not apply to them. *See* Motion at 7–12.

### LEGAL STANDARD

Defendants argue that Plaintiffs' amended complaint on its face fails to invoke the court's subject matter jurisdiction. *See* Motion at 3. " 'Facial attacks' on the complaint 'require [ ] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for purposes of the motion.' " *Broward Garden Tenants Ass'n v. United States Envtl. Prot. Agency,* 157 F.Supp.2d 1329, 1336 (S.D.Fla.2001) (quoting *Menchaca v. Chrysler Credit Corp.,* 613 F.2d 507, 511 (5th Cir.1980)). When a defendant makes a facial attack on a complaint, the court should apply the same standards as a 12(b)(6) motion, which are set forth below. *See id.*

On a motion to dismiss pursuant to Rule 12(b)(6), the Court must view the complaint in the light most favorable to the plaintiff, *Jenkins v. McKeithen,* 395 U.S. 411, 421–22, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969), and may grant the motion only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which could entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Bradberry v. Pinellas County,* 789 F.2d 1513,

1515 (11th Cir.1986). *See also* Fed. R. Civ. Pro. 8(a) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief."). Moreover, the Court must, "at this stage of the litigation, . . . accept [the plaintiff's] allegations as true." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Stephens v. Dep't of Health and Human Services,* 901 F.2d 1571, 1573 (11th Cir.1990). Thus, the inquiry focuses on whether the challenged pleadings "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley,* 355 U.S. at 47, 78 S.Ct. 99. Moreover, when on the basis of a dispositive issue of law no construction of the factual allegations will support the cause of action, dismissal of the complaint is appropriate. *Broward Garden Tenants Ass'n,* 157 F.Supp.2d at 1337.

### LEGAL ANALYSIS

■ Defendants argue that they did not receive "federal financial assistance" within the meaning of the Rehabilitation Act when they received federal funds under the Stabilization Act. *See* Motion at 7–12. The argue that, as a result, the Rehabilitation Act is inapplicable and this Court lacks subject matter jurisdiction. *See* Motion at 7–12. This Court agrees. The Rehabilitation Act prohibits discrimination against any qualified handicapped individual under "any program or activity receiving *Federal financial assistance.*" 29 U.S.C. § 794(a) (emphasis added). Because the term "federal financial assistance" is not defined in the Rehabilitation Act, courts have applied "the ordinary meaning of the term and conclude[d] that an entity receives financial assistance when it receives a subsidy." *DeVargas v. Mason & Hanger–Silas Mason Co., Inc.,* 911 F.2d 1377, 1382 (10th Cir.1990) (citing *Jacobson v. Delta Airlines, Inc.,* 742 F.2d 1202, 1208–09 (9th Cir.1984)); *Bachman v.*

*American Society of Clinical Pathologists,* 577 F.Supp. 1257, 1264 (D.N.J.1983) ("The term 'assistance' connotes a transfer of government funds by way of subsidy."). "[T]o determine the applicability of [the Rehabilitation Act] [the court] must determine whether the government intended to give [Defendants] a subsidy, as opposed to compensation." *See DeVargas,* 911 F.2d at 1382; *see id.* (stating that courts should focus on the "intention of the government to give a subsidy, as opposed to government intent to provide compensation.") (internal quotation marks omitted); *Jacobson,* 742 F.2d at 1210 ("Courts should determine whether the government intended to provide assistance or merely to compensate. The relevant intention is that of Congress or that of the administrative agency to which Congress has delegated the power to determine whether assistance should be provided."); *Delmonte v. Dep't of Bus. and Prof'l Regulation,* 877 F.Supp. 1563, 1565 (S.D.Fla.1995) ("[W]e must look to the grant statute to determine whether Congress intended to provide a subsidy when it authorized this type of training.").

The Stabilization Act, the sole source of federal funding relied upon by Plaintiffs to support the applicability of the Rehabilitation Act, was enacted "to *compensate* air carriers for losses incurred by the air carriers as a result of the terrorist attacks on the United States that occurred on September 11, 2001." 49 U.S.C. § 40101 note (emphasis added); *see also id.* at § 101(a)(2)(A) (stating that air carriers shall be "*compensate[d]* ... in an aggregate amount equal to $5,000,000,000 for [ ] direct losses incurred beginning on September 11, 2001, by air carriers as a result of any Federal ground stop order issued by the Secretary of Transportation or any subsequent order which continues or renews such a stopage.") (emphasis added); 14 C.F.R. § 330 (establishing procedures to implement section 101(a)(2) of the Stabi-lization Act and entitled "Procedures for *Compensation* of Air Carriers") (emphasis added); 14 C.F.R. § 330.1 ("This statutory provision is intended to *compensate* air carriers for direct losses incurred as a result of the Federal ground stop order issued by the Secretary of Transportation...") (emphasis added); 14 C.F.R. § 330.9 (describing the "limits on *compensation* to air carriers") (emphasis added); 14 C.F.R. § 330.11 (describing "[w]hich carriers are eligible to apply for *compensation*") (emphasis added). Because the language of the Stabilization Act is unambiguous in demonstrating that the funds provided to the Defendants were meant to be a compensation for the losses incurred as a result of the September 11, 2001 attacks, as opposed to a subsidy, the undersigned finds that the Rehabilitation Act does not apply to the Defendants in this case and, therefore, the motion to dismiss must be granted. *See, e.g., Burlington N. R.R. Co. v. Oklahoma Tax Comm'n,* 481 U.S. 454, 461, 107 S.Ct. 1855, 95 L.Ed.2d 404 (1987) (stating that when the court "'find[s] the terms of a statute unambiguous, judicial inquiry is complete.'") (quoting *Rubin v. United States,* 449 U.S. 424, 430, 101 S.Ct. 698, 66 L.Ed.2d 633 (1981)).

Relying on *Jarno v. Lewis,* 256 F.Supp.2d 499 (E.D.Va.2003), Plaintiffs argue that "[f]ederal funds to a private party are 'compensation,' and the recipient is not vulnerable to a private cause of action for disability discrimination under the Rehabilitation Act, if that money is given by the government *'for services rendered'* to it by *the recipient.*" Response at 2 (emphasis in original). Plaintiffs argue that because the Defendants provided no services for the funds they received, such funds cannot be deemed "compensation." *See id.* at 4 ("Defendants provided no services whatsoever to the government in exchange for billions of dollars they received."). This Court disagrees. The court in *Jarno* did

not hold, as Plaintiffs state, that only payments for services rendered can constitute "compensation." Rather, the court only held that payments for services rendered qualified as compensation. *See Jarno*, 256 F.Supp.2d at 504. Additionally, whether Defendants performed services in this case in exchange for the funds they received is irrelevant. As stated earlier, the inquiry of whether Defendants received "federal financial assistance" within the meaning of the Rehabilitation Act focuses on the intent of Congress when enacting the Stabilization Act, and not on the acts of the recipient of the funds. *See, e.g., DeVargas*, 911 F.2d at 1382; *Jacobson*, 742 F.2d at 1210; *cf. U.S. v. University Hosp. of State University of New York at Stony Brook*, 575 F.Supp. 607, 612 (D.C.N.Y. 1983) ("The mere fact that the recipient of funds performs some service to justify the receipt of such funds does not mean that the recipient is not receiving federal assistance."). Furthermore, to the extent Plaintiffs claim that a transfer of funds can only be deemed "compensation" when services are performed, they have failed to cite to any legal authority to support their argument.

 Plaintiffs also argue that the payments made to Defendants pursuant to section 101 of the Stabilization Act should be deemed "federal financial assistance" because Congress used the term "direct financial assistance under this Act" in section 105 of the Stabilization Act. *See* Response at 5–6. However, as the Defendants point out in their reply, "[s]ection 105 addresses only the Essential Air Service program ('EAS') for under-served routes and appropriates funds for that program separately from the compensation appropriated for losses sustained by the airlines following the September 11 tragedy." Reply at 3–4. A private entity's receipt of federal funds pursuant to the EAS does not trigger the applicability of the Rehabilitation Act to all operations of the entity, if the entity receives such funds only for that specific and limited purpose. *See, e.g., Boswell v. SkyWest Airlines, Inc.*, 217 F.Supp.2d .1212, 1218 (D.Utah 2002); *see also Jacobson v. Delta Airlines, Inc.*, 742 F.2d 1202, 1211 (9th Cir.1984) ("As we noted earlier, the Rehabilitation Act, like Title VI of the Civil Rights Act of 1964 and Title IX of the Education Amendments of 1972, . . . applies only to 'programs receiving Federal financial assistance.' 29 U.S.C. § 794 (1982) (emphasis added). The Supreme Court has repeatedly emphasized that those statutes are *program-specific* in reach—that they prohibit discrimination only in the particular program receiving the federal financial assistance.") (citing *Consolidated Rail Corp. v. Darrone*, 465 U.S. 624, 104 S.Ct. 1248, 79 L.Ed.2d 568 (1984)) (emphasis added). In their amended complaint, Plaintiffs have not alleged that the payments made to Defendants were made pursuant to the EAS or that the Plaintiffs suffered any discrimination on any EAS-subsidized routes. Instead, Plaintiffs have alleged that the payments to the Defendants were made pursuant to section 101(a)(2) of the Stabilization Act,[3] which Congress characterized as "compensation." *See* Amended Complaint at Ex. A–I (describing amounts received under section 101(a)(2) of the Stabilization Act).[4]

Accordingly, it is hereby .

---

3. Plaintiffs concede as much when they ask the Court to analogize payments made pursuant to the EAS program to payments made under section 101 of the Stabilization Act. *See* Response at 7–8.

4. Because the undersigned agrees with Defendants that Defendants received "compensation" and not "Federal financial assistance" within the meaning of 29 U.S.C. § 794, she will not address the other arguments raised in the motion.

ORDERED AND ADJUDGED that Defendants' Motion to Dismiss is GRANTED.